No. 16,029.

BOARD OF TRUSTEES OF THE FIREMEN'S PENSION FUND OF AND FOR THE CITY AND COUNTY OF DENVER ET AL. *v.* THE PEOPLE EX REL. BEHRMAN.
(203 P. [2d] 490)

Decided February 7, 1949.

302

Mr. J. Glenn Donaldson, Mr. Abe L. Hoffman, for plaintiffs in error.

Mr. C. R. Froman, Mr. C. M. Perricone, for defendant in error.

*En Banc.*

Mr. Justice Jackson delivered the opinion of the court.

In an action involving the amount of payments under the Firemen's Pension Fund of the City and County of Denver, William M. Behrman, suing for himself and others similarly situated, recovered judgment against the trustees of the fund. The latter are here seeking reversal.

Behrman became a member of the Denver fire department October 2, 1920. He was relieved from duty by reason of total disability April 16, 1936, and was placed on the pension roll. At that time he was under fifty years of age. His disability was caused by physical injuries suffered while fighting a fire. Since then he continued to draw a pension of $80 a month—being one-half the pay he was receiving as a fireman—until April 25, 1945, when his pension was reduced to $10.50 per month. The pension board—consisting of five officials: the

mayor, manager of safety, manager of revenue, auditor and fire chief—made this reduction because of an act passed by the legislature in 1945 of which paragraph E, section 456, chapter 247, S. L. '45, approved April 5, 1945, reads as follows: "All officers, members or employees heretofore retired under this section, and who had not reached the age of fifty (50) years at the time of their retirement, shall keep the board of trustees advised as to their income and employment, and in the event it appears from that or other information that a retired officer, member, or employee is receiving income from salaries, commissions, or fees which, taken together with the amount received by such person as a retirement annuity, exceeds the salary now or hereafter paid to a person holding a like position on the 'fire department which such retired officer, member, or employee occupied at the time of his retirement, said board shall order the amount of such excess deducted from said retirement annuity, or repaid to the pension fund; provided, however, that in the event such person's income is reduced at any time the board shall order said annuity increased until such person is again receiving the full amount of the award previously made by said board."

Following the passage of the law, Behrman filed an affidavit that he was employed by the Denver Ordinance Plant as a night watchman. It is stipulated that he was so employed on April 5, 1945, and at all times during the pendency of this proceeding. It is further stipulated that the pension board tendered Behrman the $10.50 per month after the passage of the 1945 act and after learning the facts concerning his employment for wages, and that "the correctness of the mathematics is admitted by the petitioner [defendant in error]."

It is further stipulated that the sole and only question presented to the trial court (without a jury), and the only issues to be reviewed by this court, are whether the foregoing paragraph E, section 456, chapter 247, S. L. '45 is unconstitutional for any of the following reasons:

"a. Because it impairs the obligation of existing contracts in violation of article II, section 11 of the Colorado Constitution. b. Because it is class legislation in violation of article V, section 25, of the Colorado Constitution. c. Because this act is retrospective in its operation in violation of article II, section 11 of the Colorado Constitution. d. Because the matters contained therein are governed by the charter of the City and County of Denver, Colorado, by virtue of section 136 of the charter of the City and County of Denver (1927 Compilation.)" We discuss these points in the foregoing order.

■ a. It is argued by counsel for Behrman that, because he contributes a percentage of his salary to the Firemen's Pension Fund, he has acquired a contractual right to a pension and a vested right in the amount which he was entitled to draw at the time he went on the pension roll. We have held, however, in *People ex rel. Albright v. Board of Trustees,* 103 Colo. 1, 82 P. (2d) 765, 118 A. L. R. 984, that the deduction made from his salary as a contribution to the fund has never come within his control and is regarded as belonging to the employer or the trustees of the fund, and so if he terminates his employment prior to becoming eligible for a pension, or if he is discharged for cause, he is eligible neither for a pension nor for a return of the amounts which had been deducted from his salary.

Neither in the *Albright case, supra,* nor in *Bedford v. White,* 106 Colo. 439, 106 P. (2d) 469, nor in any other Colorado case that has been called to our attention, do we appear to have held that the right to a pension is a right arising from contract. We are now asked to adopt the contractual or vested right theory of California (*Casserly v. City of Oakland,* 6 Calif. [2d] 64, 56 P. [2d] 237); Ohio *(Mell v. State ex rel. Fritz,* 130 Ohio St. 306, 199 N. E. 72); Georgia *(Trotzier v. McElroy,* 182 Ga. 719, 186 S. E. 817); and Florida *(State ex rel. Holton v. City of Tampa,* 119 Fla. 556, 159 So. 292, 98 A. L. R. 501).

In the Albright case, supra, we declared that there was not a contractual status existing between the state and the widows of firemen who were drawing thirty dollars a month pension prior to the 1935 amendment. The latter raised the amount of benefit to widows to forty dollars a month and increased the deductions withheld from salaries from one percent to two percent. We held that, there being no binding contract with the widows already on the pension rolls prior to the passage of the amendment, the legislature could properly include them in the forty dollar per month provision along with the widows who came on the pension rolls subsequent to the enactment of the 1935 act. It would seem to follow from our reasoning in that case that if the legislature has power to enlarge the pension payments, it also has power to diminish them, or to place limitations upon them. In *Bedford v. White, supra,* we quoted with approval the following from Corpus Juris: "A pension is not a matter of contract, and is not founded upon any legal liability. No man has a legal vested right to a pension * * * ." We are not now inclined to change this ruling when we note in McQuillan on Municipal Corporations (2d ed.), volume 6, section 2582, that: "The general point of view of the courts is that pensions are in the nature of bounties of the government which it has the right to give, withhold, distribute or recall at its discretion, hence, the law as to pensions existing at the time one enters into public service does not form a part of the contract of employment in the sense that the right to the benefits which would accrue under the then existing law are vested property rights of which such persons cannot be deprived by any subsequent Act of the Legislature."

The United States Supreme Court has expressed a similar view in *Dodge v. Board of Education,* 302 U.S. 74, 58 Sup. Ct. 98, 82 L. Ed. 57. In *Talbot v. Independent School Dist.,* 230 Ia. 949, 299 N.W. 556, 137 A.L.R. 234, the Iowa Supreme Court, although having first deter-

mined that teachers' pensions were not gratuities, went on to say: "But the fact that these retirement or disability payments are not gratuities, is not, in our judgment, sufficient to give them the character of property, or a vested right, or a contract right, which cannot be adversely affected by subsequent legislation by either the state or a municipality."

Illinois has consistently followed a similar rule, as evidenced by *People ex rel. Donovan v. Retirement Board*, 326 Ill. 579, 158 N.E. 220, 54 A.L.R. 940: "There is no contract on the part of the state to continue the payment of a benefit or annuity, and a change in the law affecting such benefit or annuity does not impair the obligation of a contract or deprive a person of property without due process of law within the meaning of the constitutional provisions invoked. *Pennie v. Reis*, 132 U.S. 464, 33 L. Ed. 426; 10 S. Ct. 149; *Pecoy v. Chicago*, 265 Ill. 78, 106 N.E. 435."

From *City of Dallas v. Trammel*, 129 Texas 150, 101 S.W. (2d) 1009, 112 A.L.R. 997, discussed at length by the trial court, we quote the following: "In our opinion, the contract entered into by the employee with the City is made subject to the reserved power of the legislature to amend, modify, or repeal the law upon which the pension system is erected, and this necessarily constitutes a qualification upon the anticipated pension and a reserved right to terminate or diminish it."

From the principle laid down in the foregoing authorities it follows that a legislative change in the amount of the pension is not an impairment of the obligation of contracts in violation of article II, section 11, of the Colorado Constitution.

It was so held in *Dodge v. Board of Education*, 364 Ill. 547, 5 N.E. (2d) 84: "The decisions of this court have uniformly been that pensions are not based on contract but are mere expectancies based upon anticipated continuance of existing law, and that future installments of pensions are not vested property rights. It follows that

the State may reduce future installments of pensions without violating the provisions of the State or Federal Constitution." See, also, *City of Birmingham v. Penuel*, 242 Ala. 167, 5 So. (2d) 723; *Gibbs v. Minneapolis Fire Dept. Relief Ass'n*, 125 Minn. 174, 145 N.W. 1075, Ann. Cas. 1915 C 749; *Van Coppenolle v. Detroit*, 313 Mich. 580, 21 N.W. (2d) 903.

■ b. It also is contended that the amendment is class legislation, in that it was directed against only that group of pensioners who had gone on the rolls prior to their reaching the age of fifty years. It is evident that the amendment, in limiting its scope to those retired before the age of fifty, does not affect those retired because of old age or long years of service. It became applicable to those retired on account of disability in their younger years, i. e., prior to age fifty. In that group it may be presumed there may be a better chance of alleviating in various degrees the disability. Where such disability has disappeared sufficiently to enable the person again to become a wage earner, the amendment merely provides that to the extent of the new earnings thus received the pension payments shall be correspondingly reduced. This does not turn the pensioner adrift, but still insures his receiving the same amount, $80.00, that his less fortunate fellow-employee, who still suffers from total disability, is receiving. We believe that this provision constitutes a reasonable classification, and does not violate article V, section 25 of the Colorado Constitution. *McClain v. People*, 111 Colo. 271, 141 P. (2d) 685; *Rinn v. Bedford*, 102 Colo. 475, 84 P. (2d) 827; *Zeigler v. People*, 109 Colo. 252, 124 P. (2d) 593.

■ c. We do not believe paragraph E, section 456, chapter 247, S.L. '45, upon which this action is based, violates article II, section 11, of the Colorado Constitution as being retroactive in its operation. The amendment of which complaint is made does not require the pensioner to refund an accrued installment of the pension. It

applies simply to installments payable after the effective date of the act concerning which Behrman complains.

■ d. It is contended that paragraph E, section 456, supra, is unconstitutional because matters contained therein are governed by the Charter of the City and County of Denver by virtue of section 136 of said charter. Section 136 of said charter (1927 compilation) provides: "The provisions of chapter 172 of the Session Laws of the state of Colorado of the year 1903, entitled, 'An Act to create and establish a pension fund for firemen, their widows and dependent children, in cities containing a population of over one hundred thousand inhabitants, and having paid fire departments, and for the maintenance, management and conduct of the same,' are hereby made and declared to be in full force and effect in the city and county."

From the foregoing it is apparent that the subject of firemen's pensions has from the beginning been a matter of state legislation (Act of 1903). This seems to have been a proper exercise of power by the state legislature. In *Police Protective Ass'n v. Warren,* 101 Colo. 586, 76 P. (2d) 94, we said: "Thus it appears that those functions, which, from their nature and the facts surrounding them, may be either a state purpose or a municipal purpose, are subject to legislative control. They may be state by reason of an existing statute, and may be transferred to municipal by legislative repeal or amendment."

In 1935, 1945 and 1947 came amendments to the Firemen's Pension Act of 1903, '35 C.S.A., c. 163, §449 et seq. It seems to be the contention of counsel for Behrman that these amendments of the legislature are a dead letter so far as Denver is concerned, although the only legislation that Denver has enacted is the foregoing section 136 of its charter. Section 6, article XX, of the Colorado Constitution reads in part: "Such charter and the ordinances made pursuant thereto in such matters [local and municipal] shall supersede within the territorial limits and other jurisdiction of said city or town

any law of the state in conflict therewith." If it be assumed that Denver adopted the Act of 1903 relating to firemen's pensions, there still is no hopeless conflict between that act and the 1945 amendment. The legislature in the latter recognized and reenacted the basic pension payment to retired firemen, but added a provision regarding those retired prior to arriving at the age of fifty years; still insuring, however, that even those who were receiving other compensation should at least be guaranteed the same net rate of payment that other pensioners were receiving.

Firemen's and policemen's pensions being of statewide, as well as local, interest and therefore subject to legislation by both state and local authorities, there is presented here a case of the state legislature having occupied the field. We have held (*Ray v. Denver*, 109 Colo. 74, 121 P. [2d] 886, 138 A.L.R. 1485), that statutes enacted by the legislature under such circumstances are controlling. If it be argued that there is a conflict between section 136 of the Denver charter and the state act creating and establishing a pension fund for firemen, etc., it will be observed that the legislature had occupied the field prior to the adoption of the first charter by Denver.

Since the amendment of 1935, there has been nearly a continuous contemporaneous construction by the administration of the acts concerning pensions and relief for firemen in Denver. Payments have been made in accordance with the 1903 act as amended in the years 1935, 1945 and 1947. We based our decision in the Albright case, supra, upon the assumption that the law, as amended in 1935, was applicable to the City and County of Denver. By dictum we recognized the validity of the amendment of 1945 in *Bedwell v. Board of Trustees*, 114 Colo. 475, 166 P. (2d) 994, when we said: "While without effect herein because of its recent passage, it would seem not improper to mention that by the passage of section 8, chapter 247, S.L. 1945, amending section 458,

supra, the legislature re-emphasized the discretion of the board in cities with a population in excess of 100,000, to disallow retirements to applicants within the age and length of service category of petitioner."

In *Lavington, Treasurer v. Gano,* 112 Colo. 510, 150 P. (2d) 312, and in *Carter v. Denver,* 114 Colo. 33, 160 P. (2d) 991, we applied the rule of contemporaneous administrative construction where such construction had continued for considerably shorter intervals than in the instant case.

If counsel for Behrman argue that section 136 of the Denver charter is a formal enactment by the people of Denver of the 1903 act of the state legislature as it existed at the time the charter was adopted (1912), it has been aptly pointed out by counsel for the trustees that if section 136 of the charter re-enacted the 1903 act of the legislature, it did so in violation of article V, section 24, of the Colorado Constitution which provides that: "No law shall be revived, or amended, or the provisions thereof extended or conferred by reference to its title only, but so much thereof as is revived, amended, extended or conferred, shall be re-enacted and published at length." On this theory, therefore, the very law upon which counsel for Behrman rely is void; and if so it is not part of the charter, and that portion of section 6, article XX, reading as follows becomes applicable: "The statutes * * * shall continue to apply to such cities and towns except insofar as superseded."

Our conclusion is, therefore, that paragraph E, section 456, chapter 247, of the 1945 act is not unconstitutional on any of the four grounds submitted in the stipulation. The trial court, having held that the section is unconstitutional, it follows that its judgment should be, and it hereby is, reversed.

MR. CHIEF JUSTICE HILLIARD dissents.

MR. JUSTICE HAYS does not participate.