**No. C-721**

**Edward Conrad, John Reynolds, Ronald Rotello and Matthew W. Matlock v. City of Thornton, a Colorado municipal corporation**

(553 P.2d 822)

Decided August 23, 1976.

Levine & McMichael, Donald E. McMichael, for petitioners.

Orrel A. Daniel, City Attorney, Leonard H. McCain, Assistant, Edward A. Brown, Assistant, T. William Wallace, Assistant, for respondent.

Calkins, Kramer, Grimshaw & Harring, Thomas T. Grimshaw, Bruce B. McCrea, for amicus curiae, Bancroft Fire Protection District.

*En Banc.*

MR. JUSTICE KELLEY delivered the opinion of the Court.

We granted certiorari to review the court of appeals decision in *Conrad v. City of Thornton*, 36 Colo. App. 22, 536 P.2d 855 (1975),

which held that a home rule city does not have authority to contract with its firemen and policemen for the refund of their individual pension fund contributions upon termination of employment. We disagree with the holding of the court of appeals and therefore reverse.

The underlying facts in this case are not disputed. On February 28, 1972, plaintiff Conrad began employment with the fire department of the City of Thornton (City), a home rule city. At the time he commenced employment, the City had already established a firemen's pension fund pursuant to section 31-30-401 *et seq.*, C.R.S. 1973. Plaintiff Conrad was told prior to the date he began his employment that he would be required to make monthly contributions out of his wages to the firemen's pension fund, but that he would be able to secure a refund of all contributions he made to the fund upon his termination of employment. At the time his employment began, the following bylaw had been adopted by the board of trustees of the City's firemen's pension fund and was in effect:

"Section 19. Refund of contributions: (A) Leaving prior to eligibility. Should any paid fireman leave the service of the city prior to becoming eligible to receive a pension payable from funds of the retirement system, for any reason other than his death, all funds that shall have been paid into such fund by such paid fireman shall be refunded to such member on demand. In no event shall such refund include accumulated interest on the paid member's contributions or any portion of the city's contribution to the retirement system."

The remaining plaintiffs began employment with the City's police department on or before February 5, 1972, at which time the City was also maintaining a policemen's pension fund pursuant to section 31-30-301 *et seq.*, C.R.S. 1973. Prior to the commencement of their employment, these plaintiffs were given the same advice as Conrad in reference to pension fund contributions and refunds.

When plaintiffs began their employment, the City had a longstanding policy of refunding individual pension contributions upon termination of employment. When plaintiffs' employment ended in the latter half of 1973, they demanded a refund of their individual contributions to the pension funds, without accrued interest. The City refused and contended that the contract for the refund of contributions was invalid, relying on the court of appeals decision in *Benson v. Sheridan*, 31 Colo. App. 540, 506 P.2d 401 (1972). The *Benson* case was decided *after* plaintiffs began their employment with the City.

Plaintiffs then filed in the district court this action in contract for the refund of their individual contributions to the pension funds. The City answered, and plaintiffs filed a motion for summary judgment. After a hearing on the matter, the trial court determined that there were no issues of material fact. The parties agreed that the City and the plaintiffs had entered into a contract for the refund of contributions made to the pension

funds upon termination of employment. The sole issue of law before the trial court was whether a home rule municipality had the power or authority to enter into such a contract. The trial court ruled that the City did possess such power or authority, and it ordered that summary judgment enter in plaintiffs' favor.

The City then perfected its appeal to the court of appeals which reversed the trial court, *Conrad v, City of Thornton, supra,* holding that state law precluded the City from entering into a contract for the refund of individual contributions to these pension funds.

We granted certiorari to review the important public issue presented by this case: whether a home rule municipality has authority to contract with its firemen and policemen to refund their individual contributions to pension funds upon termination of employment prior to the time of their eligibility for pension benefits in the absence of an express statutory or charter prohibition.

Although the City contends that the issue has been decided in this state, we find no prior Colorado case which directly resolves the precise question posed by this case.[1] In *Derby v. Police Pension and Relief Bd.,* 159 Colo. 468, 412 P.2d 897 (1966), the Court held that municipal policemen were not entitled under a theory of contract to recover individual pension fund contributions because the plaintiffs failed to prove the existence of such a contract at trial. After assuming for the purposes of argument that the existence of such a contract would entitle the policemen to a refund, the court there stated:

"To prevail in this case, on the basis of contract, where the charter is silent on the issue presented, it was incumbent upon the plaintiffs to prove that there was a contract between the city and themselves, as retired police officers, by the terms of which, in return for their contributions, they would

---

[1]A review of cases in other jurisdictions revealed that this issue has not been specifically resolved in other jurisdictions either. Some courts have *permitted* such refunds on the basis of a specific city charter provision, *Brummond v. Oklahoma,* 111 Cal.App.2d 114, 244 P.2d 441 (1952), or a city ordinance, *Ewing v. Dupee,* Fla. App., 115 So.2d 704 (1959); *Francis v. Corleto,* 204 Pa. Super. 280, 203 A.2d 520 (1964); and some courts have *denied* such refunds in the absence of a city charter provision. *Goodwin v. Board of Trustees,* 72 Cal.App.2d 445, 164 P.2d 512 (1946); *Williams v. Schrunk,* 527 P.2d 1 (Ore. App. 1974); *Williams v. City of Knoxville,* 220 Tenn. 257, 416 S.W.2d 758 (1967). Other courts have determined the legality of such refunds on the basis of a statutory provision. *Beumler v. Stillman,* 75 Ariz. 350, 256 P.2d 725 (1953) (refunds permitted); *Sommers v. Patton,* 399 Ill. 540, 78 N.E.2d 313 (1948) (refunds permitted); *O'Neal v. Trustees,* 160 N.E.2d 563 (Ohio C.P. 1959) (refunds permitted only for voluntary resignation); *Ohnmeiss v. City of Williamsport,* 5 D. & C.2d 74, 5 Lycoming 113 (Pa. 1955) (refunds not provided for); *Creps v. Board of Firemen's Relief & Retirement Fund Trustees,* 456 S.W.2d 434 (Tex. Civ. App. 1970) (refunds permitted if majority vote of firemen approved of the plan); *Jolly v. City of Bremerton,* 31 Wash.2d 873, 199 P.2d 587 (1948) (refunds permitted prospectively only); *See generally E. McQuillin, The Law of Municipal Corporations,* § 12.146 (3rd ed. 1951). But the issue of the authority of a city to contract for individual pension fund contributions on termination of employment has not been specifically addressed.

be repaid these contributions upon their severance from active service . . . . The evidence is insufficient, or rather is totally lacking, that there was ever any 'contractual arrangement' between the parties relating in any way to the return of the officers' contributions. Without such evidence, plaintiffs cannot prevail under the theory upon which their complaint is based." *Derby v. Police Pension and Relief Bd., supra.*

Likewise, in *Benson v. Sheridan, supra*, the court of appeals held that municipal police officers were not entitled to a refund of their contributions to the pension. fund on termination of employment where there was no contractual agreement for such a refund:

"*In the absence of any statutory provision or contractual agreement,* the rights of police officers under the police pension system do not include the right to a refund; . . . ." (Emphasis added.) *Benson v. Sheridan, supra.*

In the present case, however, the trial court found the existence of a contract between the City and the plaintiffs to refund their contributions to the pension benefits. The parties did not dispute this issue at trial, nor do they urge on review that this finding was inaccurate. Therefore, the sole legal issue presently in dispute is whether the contract for the refund of contributions was valid.

■ The City of Thornton is a home rule city under Article XX, Section 6, of the Colorado Constitution. Where purely local or municipal matters are involved, a home rule city may exercise exclusive jurisdiction by adopting a charter provision or by passing an ordinance which will supersede a state statute. However, a state statute applies to such a city except where it is superseded by the city charter or ordinances. *Vela v. People,* 174 Colo. 465, 484 P.2d 1204 (1971); *Colo. Const.* Art. II, Sec. 6.

■ Policemen's and firemen's pensions are not a matter exclusively of local concern. *Huff v. Mayor of Colorado Springs,* 182 Colo. 108, 512 P.2d 632 (1973); *Board of Trustees v. People ex rel. Behrman,* 119 Colo. 301, 203 P.2d 490 (1949). However, where, as here, a subject .of statewide concern is involved, a state statute on the matter does not necessarily preempt the home rule city from adopting a city charter provision or ordinance.

A review of the applicable statutes in this case reveals that the legislature has neither expressly authorized nor forbidden a refund of individual pension fund contributions on termination of employment. The court of appeals held, however, that two statutory provisions *implicitly* precluded such refunds. In reaching this conclusion the court of appeals relied upon the following statutory provision relating to the police pension fund:

"Fund not subject to attachment. No part of such pension fund, either before or after any order for the distribution thereof to the members or beneficiaries of such fund or to the widows or guardians of any such

children of any such deceased, disabled, or retired members of said department, shall be held, seized, taken, subjected to, detained, or levied on by virtue of any attachment, execution, judgment, writ, interlocutory, or other order, decree, process, or proceeding of any nature whatever, issued out of or by any court in this or any other state for the payment or satisfaction, in whole or in part, of any debt, damages, claim,.demand, judgment, fine, or amercement or such member, or his widow or children, or the beneficiaries of any deceased member. *The fund shall be sacredly kept, secured, and distributed for the purpose of pensioning and protecting the persons named in this part 3 and for no other purpose whatsoever,* but said board may annually expend such sum as it may deem proper from such fund for the necessary expenses connected therewith." (Emphasis added.) Section 31-30-313, C.R.S. 1973.

The court of appeals also relied upon the following provision relating to the firemen's pension fund:

"Exemption from levy. No part of such pension fund, either before or after any order for distribution thereof to the members or beneficiaries of such fund or the widows or guardians of any child or children of any such deceased, disabled, or retired member, officer, or employee of the fire department, shall be held, seized, taken, subjected to, detained, or levied on, by virtue of any attachment, execution, protest, or proceeding of any nature whatever issued out of, or by, any court in this or any other state, for the payment or satisfaction, in whole or in part, of any debt, damages, claim, demand, judgment, fine, or amercement of such member, or his widow or children, or the beneficiaries of any deceased member. *The fund shall be kept, secured, and distributed for the purposes of pensioning and protecting the persons named in this part 4 and for no other purpose whatsoever*; but said board may annually expend such sum as it may deem proper and necessary from such fund for the necessary expenses connected therewith." (Emphasis added.) Section 31-30-412, C.R.S. 1973.

The court of appeals specifically quoted only the underscored language in the above statutory provisions, and construed this language to mean that refunds of individual contributions to the pension funds were prohibited. We do not agree with this construction.

The guiding light in construing statutes is the intent of the legislature. *People v. Lee,* 180 Colo. 376, 506 P.2d 136 (1973). In order to ascertain the true intent of the legislature in enacting a statute, the statute under scrutiny must be construed as a whole, *Howe v. People,* 178 Colo. 248, 496 P.2d 1040 (1972), and the title of an act may be referred to as an aid in determining the legislative intent. *Western Lumber & Pole Co. v. City of Golden,* 23 Colo. App. 461, 130 P. 1027 (1913).

The statutes in question are obviously intended to protect the pension funds from attachment and levy by creditors. These statutes place a restriction on the use of pension funds in order to secure the funds for

the use and benefit of the firemen and policemen who contributed to the fund. Permitting the refund of individual pension fund contributions upon termination of employment is simply an extension of this general principle of protecting the welfare of contributors to the fund. Furthermore, where the city has contracted to make such refunds, and the policemen and firemen have relied upon such representations, to deny the refunds sought would be an unjust and unreasonable result. See section 2-4-201, C.R.S. 1973.

There is also a significant public reason for permitting such refunds. As each municipality may set its rate of municipal contributions to the pension funds within certain statutory limits or minimums,[2] so should each home rule city be able to establish a program of refunding individual contributions. Both of these factors are discretionary economic considerations for municipalities which will make public employment more competitive with the private sector in order to attract the highest caliber of public servants.[3]

We, therefore, hold that a home rule city has authority to contract with its firemen and policemen to refund the employees' individual contributions to the respective pension funds on termination of employment prior to qualification for pension benefits.

The contrary result reached by the court of appeals was largely influenced by a statutory provision which the court relied upon in construing the above-quoted statutes to preclude refunds. Section 31-30-322, C.R.S. 1973, entitles policemen to full pension benefits if they serve in *any* police department in Colorado for twenty-five years, regardless of age, or if they serve in any police department for twenty years and have reached the age of fifty-five years.[4] The court of appeals stated that to permit refunds under such circumstances

"would mean that a policeman, who reached the appropriate age and who has served for a period of 20 years in any of the police departments in the state, under agreements for refunds such as appellees have, and who has previously withdrawn all of his contributions to the pension fund pursuant to such agreements, would be able to draw a *full pension* by having made a total unrefunded contribution to the fund for only one year preceding his eligibility for retirement."

---

[2]Section 31-30-319, C.R.S. 1973 (police pension fund limit of municipal contribution up to five percent of total monthly salaries of police department); section 31-30-405(3) and (4) (firemen's pension fund minimum floor of municipal contribution to six percent of monthly salaries of fire department).

[3]The following cases dealt with refund of individual pension fund contributions in the private sector. *Lefferdink v. Baker*, 156 Colo. 457, 399 P.2d 935 (1965); *Berenbeim v. The Maccabees*, 154 Colo. 582, 392 P.2d 172 (1964).

[4]Section 31-30-408, C.R.S. 1973, is the firemen's counterpart statute.

The assumed state of facts is not before us. However, we know from past litigation which has reached this court that many cities do not provide for refunds to individual contributors to police and firemen pension funds on their termination of employment. If voluntary termination of employment by policemen with the attendant withdrawal of pension contributions and subsequent reemployment by other police departments becomes a problem of sufficient magnitude to affect the integrity of the pension funds, the cities or the general assembly can remedy the situation by corrective legislation. We do not perceive the contracts nor the bylaw in the instant case to be per se ultra vires.

The judgment of the court of appeals is reversed and remanded to the court of appeals with directions to affirm the judgment of the district court.

MR. JUSTICE GROVES and MR. JUSTICE LEE do not participate.